**TEXAS DEPARTMENT OF COR-
RECTIONS and the State of
Texas, Appellants,**

**v.**

**SISTERS OF ST. FRANCIS OF ST.
JUDE HOSPITAL OF BRENHAM,
TEXAS, Appellee.**

No. 01–91–00503–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 16, 1992.

Rehearing Denied Aug. 31, 1992.

Karen D. Matlock, Austin, for appellants.

Bruce Bigelow, Austin, for appellee.

Before COHEN, DUGGAN and PRICE[1], JJ.

## OPINION

COHEN, Justice.

Is the State of Texas liable for payment of hospital expenses incurred by an inmate it releases on emergency medical reprieve? Under the facts of this case, we hold the State is liable.

While serving an 82–year sentence for aggravated robbery, Rodney Barlow became seriously ill with infected decubitus ulcers. Because his illness was too serious to be treated at the Texas Department of Corrections (TDC), the Texas Board of Pardons and Paroles recommended on May 27, 1983, that the governor grant Barlow a six month medical emergency reprieve. On the same day the board made its recommendation, Governor Mark White granted the reprieve and the TDC released Barlow on June 1, 1983 to obtain medical treatment.

The reprieve provided that it was:

A SIX (6) MONTHS MEDICAL EMERGENCY REPRIEVE TO an approved nursing home plan in Harris County, Texas, to begin when accepted by Rodney Arnold Barlow ... and to terminate 6 months from the date granted by the Governor; conditioned, that he proceed to an approved nursing home in Harris County, Texas, immediately after release from the Texas Department of Corrections and that he contact the Houston I District Parole Office by telephone number AC 713–956–1478, immediately upon his arrival at his destination; *conditioned, that he may not change residence without prior written approval of the Board except for hospitalization,* at which time his parole officer must be notified of his location; further conditioned, *that all financial arrangements and obligations are the responsibility of the inmate or his family,* and that he

must at all times conduct himself in an exemplary manner, obey all Municipal, County, State, and Federal laws. A special report is to be submitted every 30 days by a Houston District Parole Officer after an on site visit with the releasee. The parole officer must submit a recommendation regarding whether an extension of this reprieve should be granted in the special report 30 days prior to the expiration of this reprieve; conditioned, that the releasee shall voluntarily return to the Texas Department of Corrections if no extension is granted. BE IT FURTHER KNOWN THAT ANY VIOLATION OF THE CONDITIONS SHALL BE SUFFICIENT FOR REVOCATION OF THIS EMERGENCY MEDICAL REPRIEVE....

Acceptance of conditions:

Signature: <u>Rodney Arnold Barlow</u>

(Emphasis supplied.) The reprieve was later extended, and Barlow did not return to prison until December 9, 1983. After his release, Barlow incurred the hospital bill that is the subject of this lawsuit while confined in the Sisters of St. Francis of St. Jude Hospital (Hospital) in Brenham, during July and August 1983.

As shown above, the reprieve became effective when accepted by Barlow and provided that he "or his family" was responsible for "all financial arrangements and obligations." Barlow did not sign to indicate his acceptance of the conditions until September 28, 1983, several weeks after he incurred the hospital bills.

The summary judgement evidence included the affidavit of TDC employee Catherine McVey. We have italicized, for emphasis, the parts of McVey's affidavit describing the State's role in providing care to Barlow after he left the prison. McVey swore:

The following is a chronology of events as they occurred in the release process and for the duration of Mr. Barlow's release on Emergency Medical Reprieve.

---

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at

Houston, sitting by assignment.

June 1, 1983 Rodney *Barlow was released on Emergency Medical Reprieve to the Green Acres Nursing Home* in Huntsville, Texas Mr. Barlow remained in the Green Acres Nursing Home for a short period of time (approximately 1–2 days), at which time he was transferred to the Huntsville Memorial Hospital per the orders of Dr. M. G. Selassie, a physician for the Green Acres Nursing Homes, due to the deterioration of decubitus ulcers, which were not responding to treatment. *The Texas Department of Corrections did not arrange, nor have any knowledge of this transfer at the time it occurred.* Dr. Selassie recommended that the client be transferred from the Green Acres Nursing Home which offers intermediate care to a nursing home which could provide skilled nursing care. *A level of care was initiated by the Department of Human Resources and resulted in Mr. Barlow being granted a skilled nursing care level. Mr. William Burk, with the Texas Board of Pardons and Parole, located the nearest nursing home which would accept skilled level patients.* That nursing home was the Sweetbriar Nursing Home in Brenham, Texas. Dr. Selassie ordered that Mr. Barlow be placed in this nursing home under his care until the decubitus infection had subsided.

June 13, 1983

Mr. Barlow was transported to the Sweetbriar Nursing Home in Brenham, Texas. *The Texas Department of Corrections did not arrange or authorize this transfer and did not have any knowledge of the transfer process at the time it was conducted and coordinated by the Texas Board of the Pardons and Paroles.*

July 19, 1983

*Dr. Norman Carter, a physician with the Sweetbriar Nursing Home ordered that Mr. Barlow be transferred to the St. Jude Hospital in Brenham, Texas, for the treatment of seriously infected decubitus ulcers which were not responding to treatment at the Sweetbriar Nursing Home.* At no time did the Texas Department of Corrections contract with the Sisters of St. Francis of St. Jude Hospital, Brenham, Texas for services provided to the Mr. Rodney Barlow.

August 23, 1983

On this date Mr. Bill James, Parole Analyst, with the Texas Board of Pardons and Parole, received the Governor's Proclamation Number 83–14163 granting Mr. Barlow a 6 month extension on his Emergency Medical Reprieve.

December 9, 1983

On this date Mr. Rodney Barlow was returned to the Texas Department of Corrections due to the determination made by the Texas Department of Human Resources that Mr. Barlow, in fact, did not qualify for funding for his maintenance in the nursing home.

January 27, 1984

Mr. Rodney Barlow was released from the Texas Department of Corrections on Mandatory Supervision and at that time was released to the Sweetbriar Nursing Home in Brenham, Texas.

(Emphasis supplied.)

This affidavit establishes the extent to which various state agencies arranged Mr. Barlow's care after his release from prison. He was "released on emergency medical reprieve to the Green Acres Nursing Home." The Department of Human Resources "initiated a level of care" that caused him to be moved to a different nursing home, Green Acres. This next treatment site for Mr. Barlow was "located" by Mr. William Burk of the Texas Board of Pardons and Paroles. On August 23, 1983, the Governor granted an extension of Barlow's emergency medical reprieve. On December 9, 1983, Barlow was returned to prison because the Department of Human Resources determined that he did not qualify for funding for nursing home maintenance. Finally, in January 1984, Barlow was released on parole to Sweetbriar Nursing Home.

Barlow incurred a hospital bill of $19,-640.80, which he never paid.

## PROCEDURAL HISTORY

On May 20, 1985, the Texas Legislature granted the Hospital permission to sue the State and TDC.[2] The resolution provided that the State retained all its defenses, except immunity from suit without legislative permission.

The Hospital initially sued on a sworn account and won a summary judgment. We reversed the summary judgment and held the Hospital failed to establish its sworn account against the State or TDC because the Hospital did not prove that either was a party to a contract for services to Barlow. *Texas Department of Corrections v. Sisters of St. Francis*, 753 S.W.2d 523, 524 (Tex.App.—Houston [1st Dist.] 1988, no writ). We noted that the Hospital's invoices were addressed solely to Barlow, and there was no evidence of any contract with the State. *Id.*

After remand, both sides moved for a summary judgment. The district court again granted summary judgment for the Hospital for $19,640.80, and severed the issue of attorney's fees. The State and TDC appealed.

In its motion for summary judgment, the Hospital alleged appellants were liable as a matter of law for Barlow's bill because TDC has a statutory duty to provide medical care for prisoners confined there, and that Barlow was such a prisoner because, under State law, an inmate granted an emergency medical reprieve remains in TDC's custody and is considered a prisoner for all purposes. The Hospital further contended that because Barlow was still considered a prisoner even while hospitalized outside the prison, the State had a federal constitutional obligation to provide for his medical care, under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.1982). The Hospital did not contend, as it had when obtaining its first summary judgment, that appellants were liable under a contract. Now, the Hospital's sole contention was that the State was liable as a matter of state statutory law and federal constitutional law.

## THE ISSUES

We must answer three questions:

1. Is there a duty under Texas statutes or under the United States Constitution for the State to pay for medical care provided to an inmate out of prison on emergency medical reprieve?

2. Is any such duty excused by the failure of the inmate or the Hospital to notify the State of the inmate's admission to the Hospital?

3. Is any such duty excused by the provision in the governor's proclamation that "all financial arrangements and obligations are the responsibility of the inmate or his family?"

## IS THERE A DUTY UNDER STATE STATUTORY LAW OR FEDERAL CONSTITUTIONAL LAW?

■ We first decide whether there is a duty imposed by the Texas statutes to pay for Barlow's care. If so, we need not decide the federal constitutional issue.

The Hospital relies on TEX.REV.CIV.STAT. ANN. arts. 6166g[3] and 6184n.[4]

Article 6166g provided, in pertinent part, as follows in 1983, when Barlow was hospitalized:

The Texas Prison Board ... shall be responsible for the proper care, treatment, feeding, clothing and management of the prisoners confined therein.

Article 6184n, sections 5 and 6, provided in 1983 as follows:

Sec. 5. *An inmate granted* a furlough under this article or *an emergency reprieve by the Board of Pardons and Paroles and the Governor, whether under physical guard or otherwise, shall*

---

**2.** We sometimes refer to the State of Texas and TDC jointly as "the State."

**3.** *Repealed and codified by* Act of May 26, 1989, 71st Leg., R.S., ch. 212, §§ 2.01, 3.03, 1989 TEX. GEN.LAWS 918, 919, 968. TEX.GOV'T CODE ANN. § 492.001 (Vernon 1990). Section 492.001 does not contain the words "confined therein."

**4.** Act of September 1, 1979, 66th Leg., R.S., ch. 576, § 6, 1979 TEX.GEN.LAWS 1185, 1185.

*remain in the custody of the Texas Department of Corrections and be considered a prisoner of the department for all purposes.* In the event an inmate of the department granted a furlough under this article or an emergency reprieve by the board and the governor does not return to the department at the time specified for his return, he shall be considered an escapee from the department and subject to punishment under Section 38.07, Penal Code.

Sec. 6. The cost of transportation of an inmate while the inmate is on a temporary furlough may not be paid from state funds unless the inmate is under physical guard during furlough.

(Emphasis supplied.)

We hold that article 6184n, section 5, provides that, for the purpose of receiving medical care, Barlow was a TDC prisoner "confined therein" while released on emergency reprieve. TDC was therefore responsible under article 6166g for his proper care, treatment, and management.

Article 6184n, section 5 is a specific statute governing the status of inmates granted an emergency reprieve. It provides that they remain in custody, are considered "a prisoner ... for all purposes...." and are guilty of the crime of escape if they do not return on time. This conclusion is consistent with the terms of the governor's proclamation governing Barlow's release. Barlow was not free to roam at will. Rather, he was required to go directly to an approved nursing home immediately upon release; to contact his parole officer immediately upon arrival at the approved nursing home; to remain at his approved residence and not change it without prior written approval of the Board of Pardons and Paroles, except for hospitalization, at which time his parole officer was to be notified; and to return to TDC when the reprieve expired. Our conclusion is also consistent with the summary judgment evidence, which showed that two departments of the State of Texas, the Department of Human Resources and the Board of Pardons and Paroles, decided where Barlow should be housed and treated and arranged to get

him there. Thus, the pertinent statutes, the governor's proclamation governing this specific inmate, and the actions taken by two state departments directing Barlow's housing and management after his release all support the conclusion that he was a prisoner.

In *Bryson v. State*, 793 S.W.2d 252 (Tenn.1990), the Supreme Court of Tennessee, considering this very question, held:

If Mr. Bryson was "in custody" for purposes of the escape statutes, he was sufficiently "in custody" to be considered a convict or inmate for the purposes of the statutes pertaining to the provision of medical care to convicts or inmates.

*Id.* at 255. Two judges concurring in *Bryson* wrote:

The furlough was not intended to be a release or discharge from the department's custody but rather was intended merely to extend the limits of Mr. Bryson's confinement.... A person on furlough is still a prisoner and is still in custody even though he or she has been given the privilege of being temporarily outside the institution.

*Id.* at 256.

Finally, our conclusion that the State had a duty to provide for Barlow's care is supported by other parts of article 6184n. Section 6 of article 6184n provides that the State will not be liable for transportation costs for an unguarded inmate on temporary furlough. This provision was added by amendment in 1979. Act of September 1, 1979, 66th Leg., R.S., ch. 576, § 6, 1979 TEX.GEN.LAWS 1185, 1185. It is significant because it shows that the legislature intended to avoid some payments for inmates free on furlough or reprieve, but made no exception for medical costs of an inmate released on emergency medical reprieve. The Tennessee statute construed in *Bryson* was similar, and the court took such language as evidence that the legislature did not intend to avoid medical payments for inmates released on temporary furlough. *Bryson*, 793 S.W.2d at 254.

The State relies on *Ex parte Black*, 123 Tex.Crim. 472, 59 S.W.2d 828, 829 (1933), and Public Safety and Corrections, 37

TEX.ADMIN.CODE § 143.55 (Hart January 1, 1976), both of which provide that an inmate on reprieve earns no time credit on his sentence. The State argues by analogy that such a person cannot be a "prisoner confined" in TDC. We disagree. We do not need to reason by analogy when we have a specific, unambiguous statute, article 6184n, that treats Barlow as a prisoner "for all purposes," not to mention a governor's proclamation and summary judgment evidence that show the State was controlling and managing Barlow's custody after his release.

The State also relies on an Attorney General's opinion that construed the word "confined" in article 6166g to require a prisoner's physical presence in jail. OP. TEX.ATT'Y GEN. No. JM–730 (1987). That opinion concluded that when a state prison inmate was returned to a county jail for trial and was injured while confined there, the county, not the State, was liable for his medical care. The opinion has nothing to do with the issue before us, the liability of the State for medical care to a TDC inmate released on emergency medical reprieve.

Having found that TDC has a statutory duty to provide medical care for an inmate on emergency medical reprieve, we decline to decide whether there is a similar duty imposed by the United States Constitution.

IS THE STATE'S DUTY TO PROVIDE MEDICAL CARE TO AN INMATE RELEASED ON EMERGENCY MEDICAL REPRIEVE EXCUSED BY THE FAILURE OF BARLOW OR THE HOSPITAL TO NOTIFY THE STATE OF BARLOW'S ADMISSION TO THE HOSPITAL?

■ The State's summary judgment evidence showed that "at no time did the [TDC] contract with [the Hospital] for services provided to ... Barlow." Although the record is silent regarding whether the State knew of Barlow's admission, we grant to the nonmovant, the State, all reasonable inferences from the summary judgment evidence. From this statement, we infer that no one informed TDC on June 19, or later during his stay, that Barlow needed the Hospital's services or requested TDC's permission to provide them. It is undisputed that the Hospital treated Barlow without TDC's knowledge or consent. There was no summary judgment evidence the Hospital knew, or even assumed, that Barlow was a TDC inmate. As far as the summary judgment record shows, Barlow simply appeared at the Hospital on the order of Dr. Carter, a physician at the Sweetbriar Nursing Home, and received care. Months later, when the Hospital was not paid, it billed TDC.

We hold that, under these facts, the Hospital's failure to notify TDC of Barlow's admission does not relieve the State of liability. First, the summary judgment was granted not on the basis of contract, consent, ratification, or estoppel, but upon liability imposed by statute, articles 6166g and 6184n. Moreover, the record shows that the State did not need notice and was not harmed by the lack of notice. The State knew Barlow needed medical care. That is why it released him. That is why the governor's proclamation not only mentioned hospitalization, but also provided that Barlow could change residence without the prior written approval of his parole officer only in order to be hospitalized. Finally, the State does not contend that if it had been notified of Barlow's needs, it would have provided any other care, any lesser care, or any cheaper care. The State has never challenged the necessity, the quality, or the cost of the Hospital's services to Barlow. Because nothing indicates the State would have done anything different if notified, we conclude that the State was not harmed by the lack of notice.

We realize that in *Bryson v. State*, the Tennessee Supreme Court, in holding the State liable, relied heavily on the fact that the state of Tennessee was promptly informed of the inmate's physical condition and his admission to the hospital and took no action to move him elsewhere. We agree with the *Bryson* court that, under those facts, notice to the State was a strong reason to hold the State liable. We nevertheless hold that the absence of notice to the State in the present case is not a reason for the State to avoid liability. We reach this conclusion because of the differ-

ent facts in *Bryson* and this case. Bryson was a healthy inmate released for three days to seek employment. He was not released because he was too sick to remain in prison. The state of Tennessee had no reason to expect, when it released Bryson, that he would need expensive hospitalization for which it would be liable. Thus, notice to the State was an important factor favoring liability against the State in *Bryson*. The opposite is true in this case. Barlow was released to seek medical care and had the governor's written permission to enter a hospital without advance notice to anyone. The State does not contend it was harmed by the lack of subsequent notice. Finally, the *Bryson* court decided the case solely upon the facts before it, which included the State's implied consent or estoppel to deny payment. The *Bryson* court did not need to decide, and did not decide, whether notice was required under facts like these.

IS THE STATE STATUTORY DUTY TO PROVIDE MEDICAL CARE FOR INMATES ON EMERGENCY REPRIEVE EXCUSED BY THE PROVISION IN THE GOVERNOR'S PROCLAMATION THAT "ALL FINANCIAL ARRANGEMENTS AND OBLIGATIONS ARE THE RESPONSIBILITY OF THE INMATE OR HIS FAMILY?"

■ We hold that this provision did not excuse the State from liability for Barlow's care.

First, the governor's proclamation provided that it was "to begin when accepted" by Barlow. At the bottom of the proclamation was a place for Barlow's signature below the words "acceptance of conditions." Barlow did not sign to indicate his acceptance of conditions until September 28, 1983 approximately two months after the Hospital rendered its services. Barlow's signature on September 28, 1983 waives no rights that he had before that date. There is no evidence that Barlow knew of the payment condition in the proclamation or agreed to it at any time before September 28, 1983.

Second, the Hospital was not a party to the proclamation, and no evidence shows it knew of the payment condition before rendering services. The State cites no authority for the proposition that Barlow's agreement to the condition affected the Hospital's rights.

Finally, it would be unconscionable for the State to require an inmate who is too sick to be treated at TDC to waive his right to medical care as a condition of seeking treatment elsewhere. The Texas Legislature has declared our public policy to be that the State will provide medical care to its prisoners. Given that decision by the legislature, neither the governor nor the Board of Pardons and Paroles may require an inmate to give up that valuable statutory right, in this case a right that could have meant the difference between life and death, or else remain in prison where there was admittedly no adequate treatment. Such a waiver is obviously coerced when obtained from a seriously ill and probably indigent prisoner whose only alternative is to remain in prison, and thus surrender his only chance to receive adequate treatment.

The right of an incarcerated prisoner to free medical care is recognized both under Texas statute and under the United States Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A waiver is the voluntary relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Waiver of constitutional rights will not be presumed from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). There is no evidence that Barlow's waiver was voluntary. We reserve the question of whether a waiver by an inmate in such physical condition could ever be considered voluntary.

We conclude that the State had a statutory duty to provide medical care to Barlow while he was on emergency medical reprieve; that the State's duty was not excused under these facts by its lack of notice that Barlow had been admitted to the hospital; and that the State's statutory duty is not excused by the provision in the governor's proclamation that all financial arrangements and obligations are Barlow's.

## POINTS OF ERROR

Points of error 1 and 2 assert the trial court erred in granting summary judgment because there was no contract between the State and the Hospital. The absence of contract is irrelevant because the Hospital did not recover on a contract. Points of error 1 and 2 are overruled.

The third and seventh points of error assert that appellants are not required to provide medical care to an inmate who is not physically confined within TDC. We overrule these points for the reasons stated.

The fourth point of error asserts that the State's consent to be sued does not admit liability nor waive the State's immunity from liability. In responding to the Hospital's motion, and in their own motion for summary judgment, appellants did not assert they were immune from liability for the Hospital's bill; they asserted only that they were immune from a judgment for attorney's fees, interest, and court costs. No attorney's fees have been awarded. Thus, there is no error in that respect. Appellants have cited no authority that they are immune from court costs and interest; thus, those issues are not preserved for review. TEX.R.APP.P. 74(f); *Henry S. Miller Management Corp. v. Houston State Associates*, 792 S.W.2d 128, 132 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Finally, the Hospital did not contend and the trial court did not rule that appellants admitted liability. Consequently, the fourth point of error is overruled.

In the fifth and sixth points of error, appellants assert the summary judgment was improper because all powers of State agencies are fixed by law and those dealing with them are charged with notice of the limits of their authority and bound at their peril to determine whether any perceived contract is within the agency's power. Appellants also assert they are not liable because they did not know of or agree to pay Barlow's expenses. The essence of these arguments is that Barlow had no authority to bind the State to a contract for services and the State had no power to enter such a contract. Because the judgment was not based on a contract, these points have no merit. The fifth and sixth points of error are overruled.

In their eighth point of error, appellants assert the summary judgment was improper because the governor's proclamation stipulated that Barlow was responsible for his obligations. We overrule this point for the reasons stated above.

In the ninth point of error, appellants assert that any payment to the Hospital would be an unconstitutional gift, under TEX.CONST. ART. 3, § 51, because they cannot use public money to pay a claim based on facts that generate no liability.

A court ordered payment is not a gift or a donation. We have held that the facts of this case generate State liability. The ninth point of error is overruled.

In their tenth point of error, appellants asserts the district court erred in severing the attorney's fees issue because the Hospital, as a matter of law, is not entitled to recover attorney's fees from appellants. Because a severance is not a final judgment and there is no judgment on attorney's fees, nothing is presented for review. The tenth point of error is overruled.

The judgment is affirmed.