**REVISED FEBRUARY 7, 2014**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2014

No. 12-50848

Lyle W. Cayce
Clerk

ROBERT CHARLES MORRIS, Individual and Ward of the State of Texas,

Plaintiff - Appellant

v.

BRAD LIVINGSTON, Executive Director, Texas Department of Criminal Justice,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

KING, Circuit Judge:

Plaintiff-Appellant Robert Charles Morris brings this suit pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the Texas statute providing that inmates must pay a $100 annual health care services fee when they receive medical treatment in the prison system. The district court granted Defendant-Appellee Brad Livingston's motion to dismiss. For the following reasons, we AFFIRM.

No. 12-50848

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Robert Charles Morris is an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ"), confined in TDCJ's Stevenson Unit in Cuero, Texas.  He has been in TDCJ custody since 2005.  Morris challenges the collection of the health care services fee ("fee") under Texas Government Code § 501.063.

Section 501.063 provides that "[a]n inmate confined in a facility operated by or under contract with the [TDCJ] . . . who initiates a visit to a health care provider shall pay a health care services fee to [TDCJ] in the amount of $100." Tex. Gov't Code § 501.063(a)(1) (2013).  The payment of the health care services fee "covers *all* visits to a health care provider that the inmate initiates until the first anniversary of the imposition of the fee." *Id.* § 501.063(a)(2) (emphasis added).  The inmate pays the fee out of his inmate trust fund.  *Id.* § 501.063(a)(3).  If the balance in the fund is insufficient, then "50 percent of each deposit to the fund shall be applied toward the balance owed until the total amount owed is paid," leaving the other fifty percent available for the inmate's use.  *Id.*  Section 501.063 expressly provides that TDCJ "may not deny an inmate access to health care as a result of the inmate's failure or inability to pay a fee under this section."  *Id.* § 501.063(c).[1]  The Texas Legislature

---

[1] Section 501.063 provides, in its entirety:

(a)(1) An inmate confined in a facility operated by or under contract with the department, other than a halfway house, who initiates a visit to a health care provider shall pay a health care services fee to the department in the amount of $100.

(2) The fee imposed under Subdivision (1) covers all visits to a health care provider that the inmate initiates until the first anniversary of the imposition of the fee.

(3) The inmate shall pay the fee out of the inmate's trust fund.  If the balance in the fund is insufficient to cover the fee, 50 percent of each deposit to the fund shall be applied toward the balance owed until the total amount owed is paid.

No. 12-50848

amended § 501.063 in 2011 to increase the fee from $3 to its current $100. *See* Act of July 19, 2011, 82nd Leg., 1st C.S., ch. 4, § 65.02, 2011 Tex. Gen. Laws 5333. The 2011 amendment also removed language from the section that had granted exemptions to inmates for emergency care, routine follow-up care, prenatal care, and chronic care. *Id.*

In August 2011, before § 501.063's effective date the following month, prison officials posted notices at the prison about the statute's amendment.[2] The notice listed several exemptions, even though § 501.063 did not provide for any exemptions.[3] Morris admits that notice "was provided by TDCJ" and

---

(b) The department shall adopt policies to ensure that before any deductions are made from an inmate's trust fund under this section, the inmate is informed that the health care services fee will be deducted from the inmate's trust fund as required by Subsection (a).

(c) The department may not deny an inmate access to health care as a result of the inmate's failure or inability to pay a fee under this section.

(d) The department shall deposit money received under this section in an account in the general revenue fund that may be used only to pay the cost of correctional health care. At the beginning of each fiscal year, the comptroller shall transfer any surplus from the preceding fiscal year to the state treasury to the credit of the general revenue fund.

Tex. Gov't Code § 501.063.

[2] The notice stated, in relevant part, that effective September 28, 2011,

[A] new state law goes into effect that amends Section 501.063, Texas Government Code, and changes the fee amount the Department of Criminal Justice is required to collect from each offender who requests a visit to a health care provider.

You will be charged a $100.00 fee for the first health care visit that you request.

. . .

This fee covers all health care visits that you request for one year. Any visit that you request after the one year period will be charged another $100.00 fee.

[3] Specifically, the notice stated:

You will not be charged for a health care visit that is for: an emergency or life-threatening situation; follow-up services recommended by the health care staff; chronic care (including communicable diseases such as HIV, AIDS and TB); prenatal care; health screening and evaluations related to the diagnostic and

3

No. 12-50848

"posted on housing units." In March 2012, TDCJ promulgated an administrative directive concerning the changes to the statute.[4] The directive provided that an inmate "who initiates a visit to health care staff shall pay an annual health care services fee to the TDCJ in the amount of $100 unless the visit is specifically exempt in accordance with this directive or the offender has already paid a $100 annual health care services fee within the last 12 months." The directive also listed several exemptions, including for emergency care, diagnosis or treatment of a communicable disease, mental health reviews, follow-up visits, or prenatal services, among other exemptions.

Morris alleges that he injured his knee in September 2005, that his treatment requires that he take prescription medications on a regular basis, and that some of those medications must be renewed every six months. Morris filed this § 1983 action in federal district court in August 2011, when he learned that he would be charged the health care services fee each year for medical care under the amended statute, beginning in September 2011. Morris named Governor Rick Perry as the defendant, in his individual and official capacities.

In his complaint, Morris alleged that he understood "his medical issues would no longer be considered 'chronic care' . . . under the new standards," requiring him to pay the $100 fee each year for his receipt of prison medical services. Morris maintained that "[t]he charging of prisoners or wards of the State of Texas a medical co-pay" violates the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, the *Ex Post Facto* Clause, and the Fourth Amendment. He asked the district court to enter both a declaratory

---

reception process; or, health care services necessary to comply with State law and regulations.

[4] *See* AD-06.08 (rev. 6)—Annual Health Care Services Fee for Offenders (March 2, 2012).

judgment that § 501.063 violated his constitutional rights, and preliminary and permanent injunctions preventing the State of Texas or Governor Perry from charging medical copayments to prisoners. Morris also applied to proceed *in forma pauperis* (IFP) and filed a separate motion for a preliminary injunction.

The magistrate judge granted Morris IFP status, and the district court denied his motion for a preliminary injunction, concluding that he failed to show a substantial likelihood of success on the merits. Governor Perry moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting that he was entitled to absolute immunity in his individual and official capacities for his legislative actions. He also contended that any claim against him in his official capacity was barred by the Eleventh Amendment, since he was not responsible for enforcing § 501.063. Lastly, Governor Perry asserted that Morris failed to state a claim upon which relief could be granted because § 501.063 did not violate the Constitution.

Morris opposed the motion to dismiss. He clarified that he was not challenging Governor Perry's legislative actions, but naming Governor Perry as a defendant "in his Executive duty and as the legal Guardian of the plaintiff." Morris also defended against the motion to dismiss on the merits, asserting that he had stated a claim for the deprivation of his constitutional rights. He contended that Governor Perry had failed to provide a legitimate penological interest for the seizure of Morris's money, and asserted that TDCJ should allow prisoners "a modest balance" in their trust fund accounts "to buy the simple personal commodities like toiletries available at the commissary."

The magistrate judge issued a report and recommendation that Governor Perry's motion to dismiss be granted in part. The magistrate judge recommended that the district court dismiss Governor Perry as the defendant, since he was not responsible for enforcing § 501.063 and the Eleventh

Amendment therefore barred the official capacity suit against him.   The magistrate judge recommended that the district court substitute as the defendant Brad Livingston, the executive director of TDCJ.  On the merits, the magistrate judge noted that "Morris does not allege that he might be denied medical services if he is unable to pay the copayment fee, but instead acknowledges that the statute and TDCJ Notice provide that medical services will not be denied in such a circumstance."  Accordingly, the magistrate judge concluded that Morris "does not allege that prison officials will be deliberately indifferent to any serious medical needs," and thus there was no Eighth Amendment violation.  The magistrate judge recommended finding no due process violation because TDCJ's notice was sufficient and because § 501.063 bears a rational relationship to a legitimate government interest.   The magistrate judge recommended finding no *ex post facto* violation because the health care services fee was not "punitive" in nature.  Finally, the magistrate judge recommended finding no unreasonable seizure because, although inmates have a property interest in their prison trust fund accounts, "[t]he collection of funds is directly tied to a reasonable goal on the part of the state legislature and TDCJ—that is, to reduce the state's costs in delivering health care services to prisoners by delegating minor financial responsibility to the inmate-patients—and is reasonable under the circumstances."

Morris objected to the report and recommendation.  He admitted that substituting Livingston as a defendant was proper, but he argued that Governor Perry should not have been dismissed because he was Morris's legal guardian.  He repeated his contentions in support of his claims on the merits and, for the first time, alleged that "TDCJ does not provide all hyg[ie]ne necessities." He did not specify what hygiene necessities are not provided. The district court accepted the report and recommendation, and granted Governor Perry's motion to dismiss for failure to state a claim.  The district court warned

Morris that the filing of three actions or appeals dismissed as frivolous or for failure to state a claim would bar him from bringing new IFP civil actions. Morris timely appealed.

## II.    STANDARD OF REVIEW

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).  This court "review[s] a district court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction de novo." *Id.*; *see* Fed. R. Civ. P. 12(h)(3).  "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Wolcott*, 635 F.3d at 762. We review claims of sovereign immunity de novo.  *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 273–74 (5th Cir. 2004).

Likewise, we review a district court's dismissal under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Wolcott*, 635 F.3d at 763.  Rule 8 of the Federal Rules of Civil Procedure does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Thus, a plaintiff's claim must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard is met where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.    CONSTITUTIONAL CLAIMS

Morris argues that the district court erred by dismissing Governor Perry and holding that § 501.063 did not violate the Eighth Amendment, the Due

Process Clause of the Fourteenth Amendment, the Fourth Amendment, or the *Ex Post Facto* Clause. These arguments are unpersuasive, and will be addressed in turn. We conclude that the district court was correct in all respects, and we affirm its decision.

## A.　Dismissal of Governor Perry

Morris argues that the district court erred in dismissing Governor Perry as a defendant. The district court determined that Morris's claims against Governor Perry were barred by the Eleventh Amendment, but it substituted Livingston as defendant in his official capacity as the executive director of TDCJ. We conclude that the district court did not err.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011).[5] Accordingly, absent a waiver or valid abrogation, "federal courts may not entertain a private person's suit against a State." *Id.* at 1638. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011). Accordingly, Morris's suit against Governor Perry is "no different from a suit against" the State of Texas. *Ex parte Young*, 209 U.S. 123 (1908) provides an exception to this rule: "state officers c[an] be sued in federal court despite the Eleventh Amendment . . . [if] the officers have 'some connection with the enforcement of the act' in question or [are] 'specially charged with the duty to

---

[5] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

enforce the statute' and [are] threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (en banc) (quoting *Ex parte Young*, 209 U.S. at 157, 158). The required "connection" is not "merely the general duty to see that the laws of the state are implemented," but "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* at 416.

Section 501.063 makes clear that TDCJ is the agency responsible for the section's administration and enforcement. *See, e.g.*, Tex. Gov't Code § 501.063(b) (providing that TDCJ "shall adopt policies to ensure" notice is given to an inmate before a fee is deducted from an inmate's account). Section 501.063 does not specially task Governor Perry with its enforcement, or suggest that he will play any role at all in its enforcement. As a result, Governor Perry is not a proper defendant. Morris cites no authority for the proposition that Governor Perry becomes a proper defendant because he is in a "guardian-ward relationship" with Morris, nor do we find any. Therefore, we affirm the dismissal of Governor Perry and turn to the merits of Morris's claim.

### B.    Morris's Substantive Constitutional Claims

#### 1.  Eighth Amendment Challenge

Morris asserts that the health care services fee violates the Eighth Amendment's ban on cruel and unusual punishment. We construe his claim as asserting that he is being denied medical care, or in the alternative, that the fee requires him to decide between obtaining medical care or basic necessities. We conclude that his complaint does not state sufficient facts to support an Eighth Amendment claim under either theory of relief.

Since "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," the "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "The Eighth Amendment, which applies to the

States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (internal citation omitted). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court explained that the principles behind the Eighth Amendment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103; *see also Wilson*, 501 U.S. at 297.

In *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983), the Court considered whether the Constitution affects the allocation of costs for medical care.[6] The Court explained that "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law." *Id.* at 245. The Court stated that "[n]othing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." *Id.* at 245 n.7. From this, the lower courts have concluded that there is "no general constitutional right to free health care." *Reynolds v. Wagner*, 128 F.3d 166, 173 (3d Cir. 1997); *see Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012) (the "Eighth Amendment does

---

[6] In *City of Revere*, police officers shot and wounded a suspect, whom they brought to Massachusetts General Hospital's ("MGH") emergency room for medical treatment. 463 U.S. at 240–41. MGH sent the Chief of Police of Revere a bill for the cost of the medical services it rendered the suspect, and subsequently sued Revere in state court to recover on the unpaid bill. *Id.* at 241. The Massachusetts Supreme Judicial Court had held that the Eighth Amendment required that "Revere be liable to the hospital for the medical services rendered." *Id.* The Supreme Court reversed, explaining that "the injured detainee's constitutional right is to receive the needed medical treatment; how the city of Revere obtains such treatment is not a federal constitutional question." *Id.* at 245.

Even though *City of Revere* concerned a pretrial detainee's due process rights, the Court noted that "the due process rights of a person in [the wounded suspect's] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* at 244.

No. 12-50848

not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care"); *Bihms v. Klevenhagen*, 928 F. Supp. 717, 718 (S.D. Tex. 1996) ("As [plaintiff] was obliged to pay court costs, he may be obliged to pay his medical costs.").

In the medical context, "to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."[7] *Estelle*, 429 U.S. at 106. Since *Estelle* said that "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson*, 501 U.S. at 297 (internal citation omitted). The Court explains the test as follows:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities" . . . . The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety . . . .

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted).

---

[7] The Supreme Court endorsed the use of the deliberate indifference test for Eighth Amendment challenges in prison conditions cases in *Wilson*, 501 U.S. at 297, and other courts considering prison medical copayment statutes and policies have likewise applied a deliberate indifference analysis. *See Reynolds*, 128 F.3d at 174; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1984) ("The complaint alleges no facts which the court could construe as deliberate indifference under *Estelle*[, 429 U.S. at 106–07]."); *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1116 (N.D. Tex. 2001) ("Deducting payments from [prisoner's] inmate trust account does not of itself exhibit deliberate indifference by [defendant].").

We conclude that Morris has not alleged facts that exhibit deliberate indifference. "[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Wagner*, 128 F.3d at 175; *see also Farrakhan v. Johnson*, No. 1:08cv438, 2009 WL 1360864, at \*5 (E.D. Va. May 13, 2009) (unpublished) ("Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim.").

Morris has not alleged that he is denied medical care. He also has not pled sufficient facts to show that the health care services fee acts as a functional denial of medical care, by requiring him to obtain *either* medical care *or* basic necessities. The Eighth Amendment requires prison officials to provide inmates with "adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. Although Morris alleges that "TDCJ does not provide all hyg[ie]ne necessities," he does not identify any necessities, hygienic or otherwise, that he is denied. His assertion that he should be permitted a "modest balance" in his trust fund account "to buy the simple personal commodities like toiletries available at the commissary" is similarly unavailing. *See Shapley*, 766 F.2d at 408 ("Pro se complaints must be liberally construed, but [plaintiff] alleges no facts revealing how the $3 fee requirement affected him." (citation omitted)).

Thus, while we are cognizant of the concern expressed in *Collins v. Romer*, 962 F.2d 1508 (10th Cir. 1992), that a statute not "force[] the Plaintiffs to choose between basic medical care or basic hygiene necessities," *id*. at 1510–11, Morris has not alleged that he faced any such choice. *See Wagner*, 128 F.3d at 178 ("It is apparent that the Berks County Prison Program does not force inmates to choose between necessary medical care and other essentials.").

Accordingly, Morris fails to allege that any deprivation is sufficiently serious to constitute deliberate indifference. *See Iqbal*, 556 U.S. at 678.[8]

Importantly, § 501.063 provides that TDCJ will not deny any inmate medical care because of an inmate's inability to pay. Tex. Gov't Code § 501.063(c). As in *Wagner*, the program here "does not 'condition the provision of needed medical services on an inmate's ability to pay.' Under the program, no inmate is ever denied medical care for lack of money." 128 F.3d at 174; *see also Breakiron*, 166 F. Supp. 2d at 1116 ("[Plaintiff] has not alleged, moreover, that he was denied medical treatment because of any inability to pay for the medical treatment."); *McCall v. Johnson Cnty. Sheriff's Dep't*, 71 F. App'x 30, 31 (10th Cir. 2003) (unpublished) ("It is clearly constitutionally acceptable to charge inmates a small fee for health care where, as here, indigent inmates are guaranteed service regardless of ability to pay. Despite [plaintiff's] claim, it appears that penurious prisoners have a debit placed on their prison account balance. As such, [plaintiff] does not allege that he was denied access to medical care due to any inability to satisfy the copayment requirement . . . ."). As noted, Morris does not allege that he was denied access to medical care because of his inability to pay the fee, or that provision of medical care was delayed as a result of his inability to pay. Rather, he admitted in his objection to the report and recommendation that his account was debited a $100 fee in November 2011, and that he was provided with medical care.

Moreover, § 501.063 creates a system under which only fifty percent of the monies deposited into the trust fund accounts of indigent inmates are credited against any negative balance. *See* Tex. Gov't Code § 501.063(a)(3).

---

[8] Because Morris fails to allege the denial of medical care or the forced choice between medical care and basic necessities, we are not called upon to determine which specific items may constitute basic necessities for purposes of the Eighth Amendment.

The other fifty percent remains available for an inmate's use for other means, such as to pay court fees or purchase items from the commissary.

Finally, for the same reasons we outline above, "[t]o the extent that [defendant] is arguing for some form of *per se* unconstitutionality, we reject his position." *Poole*, 703 F.3d at 1027; *see also Breakiron*, 166 F. Supp. 2d at 1115–16 ("Charging inmates for medical care, furthermore, is not *per se* unconstitutional. . . . Deducting payments from a prison trust account does not of itself violate the Eighth Amendment's prohibition against cruel and unusual punishment."); *McCall*, 71 F. App'x at 31; *Bihms*, 928 F. Supp. at 729.[9]

We are not persuaded by the statement in *Department of Corrections v. Sisters of St. Francis*, 836 S.W.2d 719, 725 (Tex. App.—Hous. [1st Dist.] 1992, no writ), that "[t]he right of an incarcerated prisoner to free medical care is recognized both under Texas statute and under the United States Constitution." The court cites *Estelle* for this proposition, but *Estelle* offers no support, simply stating that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." 429 U.S. at 103. Additionally, *Sisters of St. Francis* did not concern copayment obligations by inmates (or even an Eighth Amendment challenge), but the State's liability to a private medical facility that provided care for an inmate on emergency medical reprieve. For these reasons, we find the *Sisters of St. Francis* court's statement about prisoner access to medical care inapplicable.

---

[9] Morris also argues that the district court applied the wrong standard of review in using *Turner*, 482 U.S. at 89. We are doubtful that the legitimate penological interest test from *Turner* applies here, since *Turner* concerned a prison regulation, not a statute, and dealt with impingement on inmates' First Amendment rights, not with Eighth Amendment issues. However, even if the test applies, we conclude that § 501.063 is related to a legitimate penological interest because the statute seeks to control the prison budget, and we have recognized that budgetary considerations may be a valid penological concern. *See Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 795 (5th Cir. 2012); *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007).

The fact that the prison regulations and statutes analyzed by other courts in similar cases impose smaller fees than that in § 501.063 is not dispositive. All inmates are guaranteed medical care regardless of ability to pay, and half of all deposits into inmates' trust fund accounts is reserved for their use, even if there is a negative balance due to payment of a health care services fee. Further, Morris has not adequately alleged that he is forced to choose between paying for medical care and paying for basic necessities.

We conclude that Morris has not pled an Eighth Amendment violation.

### 2. Due Process Challenge

Morris next argues that the district court erred in denying him relief on his procedural due process claim. "To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal quotation marks and citation omitted). In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). A government decision depriving an individual of his right to "life, liberty or property" must, at a minimum, be preceded by notice and an opportunity for the individual to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

We assume *arguendo* that inmates have a protected property interest in the funds in their prison trust fund accounts, entitling them to due process with respect to any deprivation of these funds. *Rosin v. Thaler*, 417 F. App'x

No. 12-50848

432, 434 (5th Cir. 2011) (per curiam) (unpublished); *see Eubanks v. McCotter*, 802 F.2d 790, 793 (5th Cir. 1986).[10]

Morris argues that the notice was inadequate, and he also seems to argue that the prison provides inadequate post-deprivation process for challenging incorrect fee assessments. Specifically, Morris contends that TDCJ staff do not give notice to prisoners "at each visit," and he argues that the posted notice is inaccurate because it states that inmates "will not be charged" for certain health care visits, even though § 501.063 does not contain any exemptions.

Importantly, Morris's attack is on the statute itself: his claim is that § 501.063 is unconstitutional. He does not attack the regulation that the prison adopted, AD-06.08, or the regulation's effect on him.[11] As such, the regulation is relevant to this appeal only insofar as Morris's complaint about notice implicates the regulation.

We conclude that the notice provided was constitutionally adequate. Morris admitted that TDCJ posted notices about the statute in the prison. The notice informs inmates that under § 501.063, inmates will be charged a $100 fee for health care visits effective September 2011, which "covers all health care visits that you request for one year." AD-06.08, which TDCJ promulgated the following March, includes additional provisions for notice to offenders.[12]

---

[10] *See also Wagner*, 128 F.3d at 179; *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985); *Breakiron*, 166 F. Supp. 2d at 1114; *Abdullah v. State*, 211 S.W.3d 938, 943 (Tex. App.—Texarkana 2007, no pet.).

[11] Morris did not amend his complaint to add a claim challenging the prison regulation as applied.

[12] Specifically, AD-06.08 provides:

IV.  Notice to Offender

Offenders shall be provided notice explaining the annual health care services fee and which services are exempt. The notice shall clearly indicate that no offender will be denied access to health care services due to an inability or failure to pay. Such notices shall be prepared in both English and Spanish.

16

Taken together, this notice is sufficient. *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996) (per curiam) ("[W]ith respect to the alleged lack of notice, we think that the Sheriff met the constitutional minima by posting information regarding the new medical services policy in the jail cells, by distributing explanatory memoranda to the jail's personnel and by holding meetings about the new policy with medical personnel.").

We further find that the discrepancy between the posted notice and the statute does not render the notice inadequate. One of an agency's primary roles is to develop and implement regulations based on legislative enactments. *See, e.g., Galveston Cnty. v. Tex. Dep't of Health*, 724 S.W.2d 115, 123 (Tex. App.—Austin 1987, writ refused n.r.e.). Although TDCJ had not yet implemented regulations concerning § 501.063 when it posted the notice (i.e., AD-06.08), the notice itself was an exercise of TDCJ's regulation-making authority. When TDCJ promulgated AD-06.08 several months later, that

---

A. A written explanation of the annual health care services fee and exemptions shall be provided to each offender during initial orientation and intake.

B. A printed notice explaining the annual health care services fee and which services are exempt shall be prepared and affixed onto or near each sick call request box and shall be prominently posted in the patient waiting area of each unit health care department.

C. The offender Sick Call Request form shall include a statement that reads as follows: "*In accordance with state law, if this visit meets offender annual health care services fee criteria, I understand that my trust fund account may be charged a $100 fee. I also understand that I will be provided access to health care services regardless of my ability to pay this fee.*" The Sick Call Request form should be signed by the offender at the time of submission. Regardless of whether or not the offender signs the Sick Call Request the annual health care services fee shall be deducted from the offender's account if the visit to health care staff prompted by the Sick Call Request is found to meet the criteria.

*See also* Tex. Gov't Code § 501.063(b) ("The department shall adopt policies to ensure that before any deductions are made from an inmate's trust fund under this section, the inmate is informed that the health care services fee will be deducted from the inmate's trust fund as required by Subsection (a).").

17

directive was consistent with the posted notice in listing exemptions not included in the amended version of § 501.063.  Accordingly, the fact that the posted notice, unlike § 501.063 as amended, excluded payments in certain circumstances does not render that notice unconstitutional.[13]

Morris does not successfully allege any other due process violation.  He does not explain how the State's post-deprivation remedy is inadequate in any way.  *See Myers*, 97 F.3d at 95–96 ("[B]ecause a postdeprivation state remedy existed, which the plaintiffs have failed to show was inadequate, all these alleged violations fail to state an actionable constitutional claim under section 1983."); *Breakiron*, 166 F. Supp. 2d at 1114 (holding that plaintiff failed to allege that deductions from prison trust fund account occurred without due process of law).  In fact, he admits that he received credit for at least one $100 charge that he alleged had been deducted incorrectly.  Accordingly, Morris's due process claims fail.

### 3.  Fourth Amendment Challenge

Morris argues that the health care services fee constitutes an unreasonable seizure in violation of the Fourth Amendment.  A seizure of property occurs when there is "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  "The Fourth Amendment requires that any seizure of property by the State be reasonable." *RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 846 (5th Cir. 2013).  As noted above, we assume *arguendo* that inmates have a property interest in their inmate trust fund accounts. *Rosin*, 417 F. App'x at 434; *Breakiron*, 166 F. Supp. 2d at 1114.

The district court determined that the seizure of Morris's funds was reasonable because it was related to the legitimate penological purpose of

---

[13] As noted above, because Morris does not challenge the regulation's effect on him, we are not presented here with any question about the how the prison has executed its policy.

controlling the prison budget.  In his brief, Morris contends that the district court erred in determining that budgetary concerns were a valid penological concern.  We have held that prison policies adversely affecting a prisoner's constitutional rights may be justified based on budgetary concerns.  *See Moussazadeh*, 703 F.3d at 795 (recognizing that "cost reduction, as a general matter, is unquestionably a compelling interest of TDCJ," but expressing skepticism that TDCJ's savings in denying kosher meals to a prisoner constitutes a compelling interest); *Baranowski*, 486 F.3d at 122 (concluding that prison's failure to provide kosher meals was justified in part because of expense).  The district court concluded that the fee increase was based on budgetary concerns, and Morris concedes the point.

Moreover, we are skeptical that the assessment of the fee is a seizure given its nature as a fee charged in exchange for the provision of medical care. *See, e.g., Wagner*, 128 F.3d at 180 ("[T]his is not a situation in which the inmates are deprived of the benefits of their property and receive nothing in return; rather in exchange for the fees, the inmates receive the benefit of health care . . . .").  Additionally, as discussed *supra*, adequate post-deprivation procedures are in place, should Morris's trust fund account be charged unreasonably or erroneously.

Accordingly, Morris has not shown that the taking of funds from his inmate trust fund account to pay for his medical care was unreasonable in light of the goal of controlling the prison budget.  Therefore, Morris has not established that the district court erred in denying relief on his Fourth Amendment claim.

### 4. *Ex Post Facto* Claim

Morris next contends that the health care services fee violates his right to be free from *ex post facto* punishments.  He concedes that his claim is foreclosed by Supreme Court precedent, though he seeks to preserve his claim

for review by the Supreme Court.[14]  Morris does not articulate any argument for why § 501.063 constitutes an *ex post facto* punishment, nor does he cite any authority for his position.  We conclude that Morris has waived this argument.  *See, e.g., Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." (quoting *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988))); *Sylvester v. Cain*, 311 F. App'x 733, 735 (5th Cir. 2009) (per curiam) (unpublished) ("[A]lthough pro se briefs are afforded liberal construction, even pro se litigants must brief arguments in order to preserve them.  [Defendant] may not incorporate by reference the arguments that he made in his district court pleadings." (internal citations omitted)).

### C. Miscellaneous Claims

Morris also argues that: (1) there are constitutional inadequacies in the prison library; (2) § 501.063 violates the Bill of Attainder Clause; and (3) the district court discriminated against him on the basis of his IFP status when it warned him not to file additional frivolous complaints.  We find each of these arguments waived because Morris failed to raise it below.  *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) ("An argument not raised before the district court cannot be asserted for the first time on appeal.").

## IV.   CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[14] He argues: "While Morris still contends that the statute in question is a violation of the ex post facto clause, he also understands that the courts are bound by the Supreme Court law.  Morris does not waive this argument, but preserves such to petition the Supreme Court on such unique argument at a later date, if necessary.  Therefore, Morris incorporates his previous arguments and objections raised in district court herein."