# United States Court of Appeals
# for the Fifth Circuit

_____

No. 22-10517
_____

Samuel San Miguel,

Plaintiff—Appellant,

*versus*

Marsha McLane, *Texas Civil Commitment Center, Executive Director*; Michael Searcy; John Cochran; Cortney Bearden; Debra Keesee,

Defendants—Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:20-CV-41

_____

Before Chief Judge Richman, and Judge Stewart, *Circuit Judge,* and Judge Hanks, *District Judge.*[*]

Per Curiam:[**]

Samuel San Miguel, proceeding *pro se* and *in forma pauperis*, appeals the district court's grant of motions to dismiss filed by defendants Marsha McLane, Michael Searcy, John Cochran, Courtney Bearden, and Debra

_____

[*] District Judge for the Southern District of Texas, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10517

Keesee (collectively, Defendants).  San Miguel argues the magistrate judge (1) incorrectly concluded that he failed to sufficiently allege several of the Defendants' personal involvement in the purported constitutional violations and (2) wrongly applied the Eighth Amendment's deliberate indifference standard instead of the Fourteenth Amendment's professional judgment standard when evaluating whether San Miguel sufficiently alleged constitutional violations.  San Miguel also appeals the district court's denials of his motion for preliminary injunction, motion for appointment of counsel, and motion to vacate.  We affirm in part, reverse in part, and remand.

## I

In 2002, Samuel San Miguel pleaded guilty to two counts of aggravated sexual assault of a child and was sentenced to thirteen years of imprisonment.  Near the end of San Miguel's sentence, the State of Texas filed a petition to civilly commit him as a sexually violent predator (SVP) under the Texas Sexually Violent Predator Act (SVPA).[1]  Following a jury trial, San Miguel was civilly committed under the SVPA.  San Miguel has been housed at the Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), since 2015.

Three separate incidents arising from San Miguel's time at the TCCC serve as the basis for the claims in this appeal.

First, in 2016, San Miguel was placed on an active medical order for extra calories, which entailed a 4 oz. calorie health shake.  Over the next several years, however, TCCC officials intermittently denied him these calorie shakes, allegedly in response to San Miguel's hunger strikes, one of which lasted twenty-two days.  The medical director, after two and a half

---

[1] *See* Tex. Health & Safety Code §§ 841.001-.153.

2

years of San Miguel having a medical order for calorie shakes, determined that he no longer qualified for them, and San Miguel stopped receiving the shakes. San Miguel then complained about "hunger pains" and purportedly lost twelve pounds. As a result, medical staff began weighing him weekly but did not reinstate the calorie shakes. In turn, San Miguel "begged" Michael Searcy, the facility administrator, to allow him to receive a package of food from his family. Pursuant to a TCCC policy, Searcy "personally denied" these requests for "over a year and [eight] months" because San Miguel had not taken a polygraph exam.

Second, at some time before April 2018, San Miguel visited a dentist. An unnamed dentist evaluated San Miguel's right front tooth, which had been chipped before he entered the TCCC, and told him that the tooth needed to be filled or it would eventually be lost. Accordingly, San Miguel complained to Searcy about his tooth and filed several sick-form requests and grievances to have the tooth filled. TCCC officials responded to these grievances by notifying San Miguel that the TCCC only provides for teeth extractions and would not pay for this treatment. In response to San Miguel's complaints, Searcy told him they "were not gonna pay to fix it." San Miguel then requested a job so he could pay for the treatment, but asserts he was "forced to remain indigent." Later, San Miguel visited a different dentist, who advised him that he now needed a root canal to save his front tooth and had two cavities that needed to be filled. He submitted another grievance form requesting the recommended dental care but did not receive the treatment.

Third, in September 2019, San Miguel took a blood test that indicated he was not taking his prescribed medications, Wellbutrin and Seroquel.

No. 22-10517

Courtney Bearden,[2] a nurse practitioner with the medical provider for persons civilly committed at the TCCC—Texas Tech University Health Sciences Center (TTUHSC)—analyzed these tests and determined that San Miguel should no longer receive these medications.  In accordance with this decision, Debra Keesee, a registered nurse with TTUHSC, told San Miguel that he would no longer receive Seroquel or Wellbutrin.  As a result of stopping these medications, San Miguel began experiencing "extreme withdrawals from the medication," such as sleeplessness, headaches, and vomiting.  San Miguel notified TCCC officials of his symptoms, filed several grievance forms, and requested relief.  Eventually, Bearden gave San Miguel melatonin and Zoloft.

San Miguel filed a 42 U.S.C. § 1983 civil rights complaint against TTUHSC, Marsha McLane, Michael Searcy, Rachael Kingston, Chris Salinas, John Cochran, Cynthia Jumper, Taylor Caldwell, Joanne Castro, Courtney Bearden, and Debra Keesee, asserting they committed nine distinct constitutional violations and seeking damages and injunctive relief.  However, San Miguel only appeals the dismissal of defendants McLane, Searcy, Cochran, Keesee, and Bearden.  Accordingly, we only discuss the allegations pertaining to these Defendants on appeal.

According to San Miguel, Marsha McLane is the executive director of the Texas Civil Commitment Office (TCCO), which operates the TCCC; Michael Searcy is the "[o]peration [s]pecialist of the TCCO"; Debra Keesee is a "nurse with [Texas Tech University] in the Psych. dep[artment] at the TCCC"; Courtney Bearden is the "[n]urse [p]ractitioner for [the] TCCC

---

[2] While the caption indicates the spelling is "Cortney," her motion to dismiss spells her name "Courtney."  We use the latter spelling in the opinion.

medical [department]"; and John Cochran is the "TCCC [f]acility [a]dministrator."

Claims one and two allege that Cochran, McLane, and Searcy denied him adequate nutrition by denying him his calorie shakes and a food package. Among these allegations, San Miguel asserts that TCCC has a custom of denying detainees adequate nutrition.

Claims three and four allege that Searcy and McLane refused to pay to have his tooth repaired per a dentist's recommendation when he was otherwise unable to pay for this treatment.

Claims five through nine allege that Defendants have improperly denied him appropriate psychiatric care and medications. In claims five and six, he alleges that McLane contracted for a lower standard of care "to help her manage her budget and pocket the money." In claim seven, San Miguel asserts that Keesee and Bearden denied him adequate medical care by stopping his doses of Seroquel and Wellbutrin and then ignoring his requests for relief from withdrawal symptoms. Finally, in claims eight and nine, San Miguel alleges that Keesee and Bearden denied him adequate medical treatment by curtailing his medication for "not attending group treatment," "breaking the rules at the facility," and filing grievances against them.

The district court considered two different complaints when dismissing the Defendants. First, defendants Cochran and Bearden moved to dismiss San Miguel's original complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The magistrate judge's report and recommendation concluded the district court should grant these motions to dismiss. San Miguel did not object to the magistrate judge's report and

recommendation, and the district court adopted it after conducting a review for clear error.

San Miguel then filed an amended complaint against the remaining defendants. Defendants McLane, Searcy, and Keesee moved to dismiss San Miguel's amended complaint under Rules 12(b)(1) and 12(b)(6). Similarly, the magistrate judge's report and recommendation, which San Miguel objected to this time, recommended the district court grant the motion. The district court conducted a de novo review and adopted the recommendation.

San Miguel timely filed a notice of appeal as to his claims against McLane, Searcy, Cochran, Keesee, and Bearden.

## II

At the outset, we outline the scope of San Miguel's appeal and the applicable standards of review. "Although we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28."[3] To the extent that San Miguel is seeking monetary damages from Defendants in their official capacities, San Miguel has not briefed, and has therefore abandoned, any argument challenging the dismissal for lack of subject matter jurisdiction of

---

[3] *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

these claims.[4]  However, San Miguel has sufficiently briefed the other issues as to not have abandoned them.[5]

We must apply different standards of review to the Defendants because San Miguel objected to some, but not all, of the magistrate judge's reports and recommendations.  "When a party who is warned of the requirement to file timely objections to a magistrate judge's report and recommendation fails to file any such objections, and the magistrate judge's factual findings and legal conclusions are accepted by the district court, our review is for plain error."[6]  Despite receiving a sufficient warning, San Miguel did not object to the magistrate judge's reports and recommendations that concluded the claims against Cochran and Bearden should be dismissed.[7]  In contrast, San Miguel objected to the magistrate judge's report and recommendation that advised dismissing the claims against Searcy, McLane, and Keesee.  Accordingly, we review dismissal of the claims against

_____

[4] *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner,* 813 F.2d 744, 748 (5th Cir. 1987) (noting that "without even the slightest identification of any error in [the court's] legal analysis or its application to [the suit], [it] is the same as if he had not appealed that judgment").

[5] *Grant*, 59 F.3d at 524-25 ("This Court has considered a *pro se* appellant's brief despite its technical noncompliance with the Rules of Civil Procedure when it at least argued some error on the part of the district court.").

[6] *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

[7] Moreover, the district court did not conduct an independent review of the magistrate judge's report and recommendation.  It only reviewed it for clear error.  *See Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir. 2005) ("[W]hen a party fails to file timely written objections to a magistrate judge's findings-of-fact and conclusions-of-law, our review is for plain error.  However, when the district court engages in an independent evaluation of the record . . . the standard of review depends upon the issue on appeal.").

No. 22-10517

Cochran and Bearden for plain error and the claims against Searcy, McLane, and Keesee de novo.[8]

## III

We begin by analyzing San Miguel's claims against Cochran and Bearden. Dismissal is appropriate when a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[11] The facts alleged in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.[12] "If a complaint is written *pro se*, we are to give it a liberal construction."[13] We are "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."[14] We may also consider

---

[8] *See Verizon Wireless*, 875 F.3d at 248; *Sw. Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008) ("A Rule 12(b)(6) dismissal for failure to state a claim is reviewed *de novo*.").

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] *Id.* (citing *Twombly*, 550 U.S. at 556).

[11] *Twombly*, 550 U.S. at 545.

[12] *Green v. Atkinson*, 623 F.3d 278, 280 (5th Cir. 2010).

[13] *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[14] *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).

reliable evidence such as the plaintiff's responses to a questionnaire and authenticated records.[15]

To establish reversible error in the plain error context, San Miguel must show (1) an error, (2) that is clear or obvious, and (3) that affected substantial rights.[16]  Under plain error review, a "lack of binding authority is often dispositive."[17]  While San Miguel does not need to show that his specific challenge has been addressed in a prior decision, "he must at least show error in the straightforward applications of existing cases."[18]  Even when an argument "merely requires extending existing precedent, the district court's failure to do so cannot be plain error."[19]

## A

With respect to San Miguel's claims against Cochran, we conclude the district court did not err.  It is "[w]ell settled" that "Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously

---

[15] *See Berry v. Brady,* 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted) (quoting *Wilson v. Barrientos,* 926 F.2d 480, 482-84 (5th Cir. 1991))); *Eugene v. Deville,* 791 F. App'x 484, 485 (5th Cir. 2020) (per curiam) (unpublished) (relying on exhibits submitted with the plaintiff's complaint when concluding the plaintiff's "allegations could show that the medical staff were aware of his pain and failed to provide care").

[16] *United States v. Brown,* 437 F.3d 450, 451 (5th Cir. 2006).

[17] *United States v. McGavitt,* 28 F.4th 571, 577 (5th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. Gonzalez,* 792 F.3d 534, 538 (5th Cir. 2015)), *cert. denied,* 143 S. Ct. 282 (2022).

[18] *United States v. Cabello,* 33 F.4th 281, 291 (5th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. Vargas-Soto,* 700 F.3d 180, 182 (5th Cir. 2012)).

[19] *Jimenez v. Wood Cnty.,* 660 F.3d 841, 847 (5th Cir. 2011).

liable for their subordinates' actions."[20]  "Personal involvement is an essential element of a civil rights cause of action."[21]  San Miguel alleges no facts that Cochran was personally involved in denying him calorie shakes, food packages, dental treatment, or psychiatric care.  The only connection San Miguel alleges between Cochran and these claims is that Cochran is the "[f]acility [a]dministrator."  This is insufficient to "state a claim to relief that is plausible on its face."[22]

## B

Similarly, the district court did not err in dismissing any of the claims against nurse practitioner Bearden.  While the magistrate judge incorrectly stated that "San Miguel's right to reasonably adequate medical care derives from the Eighth Amendment," he did not commit plain error in applying the Eighth Amendment deliberate indifference standard to San Miguel's claims against Bearden.

In *Youngberg v. Romero*,[23] the Supreme Court recognized that a civilly committed individual's rights to adequate food, shelter, clothing, and medical care flow from the Fourteenth Amendment.[24]  The Court further explained that these individuals are entitled to "more considerate treatment and conditions of confinement" than prison inmates "whose conditions of confinement are designed to punish."[25]  In doing so, the Court created a test

---

[20] *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

[21] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[23] 457 U.S. 307 (1982).

[24] *Id.* at 315.

[25] *Id.* at 322.

under which "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."[26] However, we have noted that the Court's later decision in *DeShaney v. Winnebago County Department of Social Services*[27] cast "doubt on the vitality of *Youngberg* by confirming that a deliberate indifference standard is the appropriate measure of constitutional liability for a prison official's failure to provide a convicted inmate with basic human needs."[28]

This being said, our court has not decided whether the deliberate indifference or professional judgment standard applies to claims brought by civilly committed individuals alleging that they received inadequate medical care.[29] Furthermore, other federal circuits are divided on the issue.[30] As a

---

[26] *Id.* at 323.

[27] 489 U.S. 189 (1989).

[28] *Hare v. City of Corinth*, 74 F.3d 633, 647 (5th Cir. 1996); *cf. Perniciaro v. Lea,* 901 F.3d 241, 256 n.13 (5th Cir. 2018) ("We harbor doubt, however, that it has been clearly established that *Youngberg* applies to persons detained pre-trial for competency restoration . . . . [W]e have held that deliberate indifference is the appropriate standard to apply to inadequate-medical-care or failure-to-protect claims brought by pre-trial detainees who, like persons involuntarily committed, may not constitutionally be punished.").

[29] *See Perniciaro,* 901 F.3d at 255-56 (acknowledging the issue but refusing to decide whether the deliberate indifference or professional judgment standard applies to inadequate-medical-care claims by civilly committed individuals).

[30] *Compare Scott v. Benson,* 742 F.3d 335, 339 (8th Cir. 2014) (holding that the deliberate indifference standard applies), *and Smego v. Mitchell,* 723 F.3d 752, 756 (7th Cir. 2013) (reasoning that the due process protection afforded civilly committed individuals is "functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners"), *with Mitchell v. Washington,* 818 F.3d 436, 443 (9th Cir. 2016) (utilizing the professional judgment standard), *and Patten v. Nichols,* 274 F.3d 829, 838 (4th Cir. 2001) (holding that "denial-of-medical-care claims asserted by involuntarily committed

result, we cannot say that the magistrate judge plainly erred by applying the deliberate indifference standard when analyzing the claims against Bearden.

The magistrate judge's analysis based on the deliberate indifference standard was not plain error. Courts have characterized deliberate indifference as "a stringent standard of fault"[31] and "an extremely high standard to meet."[32] The test is one of "subjective recklessness."[33] Accordingly, the plaintiff "must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively dr[e]w the inference that the risk existed; and (3) disregarded the risk."[34] In addition to these requirements, the plaintiff must establish that "the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain."[35]

Evidence of unsuccessful medical treatments, incorrect diagnoses, or disagreements with the treatment provided are insufficient.[36] Further, acts of negligence, neglect, or medical malpractice do not rise to the level of

---

psychiatric patients must be measured under *Youngberg*'s 'professional judgment' standard").

[31] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).

[32] *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

[33] *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

[34] *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 837).

[35] *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

[36] *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (noting that "mere disagreement with the treatment provided is not sufficient to state a claim for deliberate indifference"); *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

constitutional violations under the deliberate indifference standard.[37] To this point, when defendants administer some form of medical treatment, it is difficult for plaintiffs to establish deliberate indifference[38] because courts "do not demand perfection"[39] or care consisting of "the best that money could buy."[40] Therefore, we require a plaintiff to demonstrate that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[41]

San Miguel alleges Bearden denied him adequate medical care by "abruptly stopping [his] psychiatric medication knowing of his serious medical need, then ignoring his complaints and requests for help"; "denying him medical care because he has broken the rules of the facility"; and retaliating against him for filing a grievance against her by "completely stopping any and all psychiatric medications." According to San Miguel, Bearden told him the Seroquel and Wellbutrin were either not present in his blood or existed only at very low levels and "abruptly" discontinued his medications, causing him to experience severe withdrawal symptoms. However, he asserts that this reasoning was a lie and the real reason was "cutting spending." Additionally, after stopping these medications, he asserts Bearden ignored his request for medical attention while he was

---

[37] *See Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) ("Mere negligence, neglect or medical malpractice is insufficient.").

[38] *See, e.g.*, *Petzold*, 946 F.3d at 250 ("But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied.").

[39] *Sanchez v. Oliver*, 995 F.3d 461, 473 (5th Cir. 2021).

[40] *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

[41] *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

suffering withdrawal symptoms. He also contends that Bearden refused to give him medication because he "had a history of breaking the rules at the facility" and as retaliation for filing a grievance against her.

Here, San Miguel's allegations amount to a "disagreement with his medical treatment," not deliberate indifference.[42] First, San Miguel acknowledges that there was an objective medical basis for the denial of his medications. In his declaration attached to his complaint, he states that nurse Keesee told his provider that these medications were "bad for [his] blood pressure[] and bad for [his] anxiety." Second, his blood tests, which are in the record, revealed that the medications were in his bloodstream in small amounts. We have previously noted that "[a] medical doctor is entitled—obliged, even—to change a patient's prescription in response to suspected misuse, addiction, or abuse. Doing so is not deliberate indifference."[43] Therefore, Bearden was entitled to consider the blood tests that suggested San Miguel was misusing his medications when determining the appropriate prescription for him. Indeed, San Miguel conceded that Bearden offered him other medication—"a shot of Haldol every [two] weeks" to combat his Bipolar disorder, melatonin for his sleeplessness, and Celexa for his depression and ADD/ADHD—which he refused. These allegations do not state a claim for deliberate indifference, especially under the plain error standard.

Furthermore, San Miguel did not sufficiently allege a § 1983 claim by asserting Bearden "ignore[ed] his complaints and requests for help while he suffered" withdrawal symptoms. Once again, "[p]ersonal involvement is an

---

[42] *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

[43] *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015).

essential element of a civil rights cause of action."[44]   San Miguel must sufficiently allege Bearden "(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively dr[e]w the inference that the risk existed; and (3) disregarded the risk."[45]

San Miguel's allegations fall short of sufficiently alleging that Bearden knew of his severe withdrawal symptoms and certainly that Bearden "subjectively dr[e]w the inference that a substantial risk of serious harm exists."[46] San Miguel asserts that he requested help from several people but pleads no facts involving when or where he asked Bearden for help.  He alleges that "[m]ultiple security officers witnessed [his] suffering" and he asked "the TTU Nurse" and "RN Joe Brown" for help.  The grievance forms that San Miguel attached to his complaint do not support Bearden's personal involvement either.  Those grievance forms do not have Bearden's signature or indicate she was aware of them.  Indeed, according to San Miguel's complaint and attached declaration, when he finally saw Bearden on November 26, after he had allegedly begun suffering withdrawal symptoms, he only mentioned his inability to sleep, and she gave him melatonin for his insomnia.  She also offered him substitute medications, and he refused them.  Accordingly, San Miguel alleges no facts that indicate Bearden was aware of his suffering, subjectively inferred that he was suffering withdrawal symptoms, and disregarded the risk.

San Miguel's allegations that Bearden denied him medical care because he had a history of breaking the facility rules and as retaliation also

---

[44] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[45] *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[46] *Id.* at 676 (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 837).

do not state a plausible claim for relief.  The "decision whether to provide additional treatment is a classic example of a matter for medical judgment."[47] Accordingly, a prescriber is entitled to consider a patient's compliance with facility rules when considering the best treatment.[48]

Finally, in order to establish a claim for retaliation, San Miguel must demonstrate the following: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation."[49]   "Mere conclusionary allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."[50]  San Miguel "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"[51]

Here, San Miguel only provides the conclusory allegations that "[a]s the result of Plaintiff telling Bearden about him writing a grievance against her, she completely stopped all of [his] Psychiatric Medication."  Not only is this conclusory allegation insufficient to support a retaliation claim, but also the "chronology of events" does not support the claim.[52]  San Miguel alleges that "Keesee and Bearden completely refused [him] his medication for his psychotic disorders on . . . November 12, 2019."  However, he did not file a grievance against Bearden until December 5, 2019.  From San Miguel's own

---

[47] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

[48] *See Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015) (giving wide latitude when considering the appropriate medication to prescribe).

[49] *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004).

[50] *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

[51] *Id.* (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

[52] *Id.* (internal quotation marks omitted) (quoting *Woods*, 60 F.3d at 1166).

allegations, it appears that he filed his grievances because they refused him medication—not vice versa. Accordingly, the district court did not err in dismissing San Miguel's retaliation claim against Bearden.

## IV

We now turn to San Miguel's claims against McLane, Searcy, and Keesee, which we review de novo. [53] We first address San Miguel's claims against McLane and Searcy for allegedly denying him adequate nutrition and recommended dental care, then we analyze his claims against Keesee for improperly denying him psychiatric care.

## A

In his amended complaint, San Miguel alleges that McLane and Searcy violated his right to adequate medical care by not providing him with a medically ordered calorie shake and not allowing him to receive a food package from his family. Specifically, he alleges that "TCCC has a custom of denying the TCCC patients and San Miguel an adequate diet" and McLane and Searcy are "responsible for the overall function, policy, and administration of the TCCC." Furthermore, he alleges that he has "begged" Searcy to allow him to receive a food package from his family, but Searcy has "personally denied" this request because "he has not taken a polygraph exam."

With respect to San Miguel's claims that McLane and Searcy denied him adequate medical care by halting his calorie shakes, he has failed to sufficiently allege their involvement to state a plausible claim for relief. "Supervisory officials may be held liable only if: (i) they affirmatively

---

[53] *See infra* Part II; *see also Sw. Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008) ("A Rule 12(b)(6) dismissal for failure to state a claim is reviewed *de novo.*").

participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."[54]   San Miguel fails to allege any specific actions by McLane or Searcy that led to his calorie shakes being denied.  Nor has he sufficiently alleged that they have implemented any custom or policy that has resulted in him being denied his calorie shakes.  The only connection that San Miguel alleges between Searcy, McLane, and the denial of his calorie shakes is that they are "responsible for the overall function, policy, and administration of the TCCC."  San Miguel's only allegation that a custom or policy even exists is the statement that TCCC conducted a "facility wide sweep" of "every patient's calorie shake."  These statements are insufficient to allege that Searcy or McLane created a policy that resulted in the "facility wide sweep."  Accordingly, the district court did not err in dismissing San Miguel's claims against Searcy and McLane for denying his calorie shakes.

San Miguel also failed to sufficiently allege a Fourteenth Amendment conditions-of-confinement claim against Searcy and McLane for denying him access to the food package.  The conditions of confinement for civilly committed individuals are governed by the Due Process Clause of the Fourteenth Amendment.[55]  While civilly committed individuals are entitled to "more considerate treatment and conditions of confinement," we have acknowledged that "[d]ue process requires only that 'the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.'"[56]   Accordingly, the plaintiff must sufficiently allege how the conditions at the facility "lacked a reasonable

---

[54] *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).

[55] *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).

[56] *Brown v. Taylor,* 911 F.3d 235, 243 (5th Cir. 2018) (first quoting *Youngberg,* 457 U.S at 321-22; then quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)).

relation to Texas's twin goals of 'long-term supervision and treatment of sexually violent predators.'"[57]

The magistrate judge correctly concluded that San Miguel failed to allege a constitutional violation springing from either (1) requiring him to take a polygraph exam or (2) denying his care package. San Miguel alleges that he was denied the food package because he did not take a polygraph exam. The single case in which we have concluded that a polygraph exam requirement could violate a civilly committed person's constitutional rights—*Bohannan v. Doe*[58]—is distinguishable from this circumstance. In that unpublished opinion, we concluded that mandatory polygraph examinations, which were used to monitor whether civilly committed individuals complied with their commitment orders, could violate their Fifth Amendment rights.[59] In contrast, denying San Miguel a single food package does not amount to a constitutional violation. Indeed, other circuits have recognized that "the Constitution is not concerned" with "*de minimis*" restrictions of a civilly committed individual's freedoms, including "access to the canteen and outside vendors and computer privileges."[60] A single food package is more akin to these *de minimis* restrictions than an encroachment on one's Fifth Amendment rights. Therefore, the district court did not err in dismissing San Miguel's claims against Searcy and McLane.

The magistrate judge also liberally construed this claim as a denial-of-medical-care claim. We agree with his dismissal of this claim as well.

---

[57] *Id.* at 243 (quoting Tex. Health & Safety Code § 841.001).

[58] 527 F. App'x 283 (5th Cir. 2013) (per curiam) (unpublished).

[59] *Id.* at 295-96.

[60] *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 n.7 (8th Cir. 2006) (internal quotation marks omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979)).

19

Regardless of whether the professional judgment or deliberate indifference standard applies to denial-of-medical-care claims for civilly committed individuals, such a claim must implicate the individual's constitutional right to adequate medical care.[61]

While San Miguel alleged Searcy "personally denied" his request for the food package, he has failed to allege that denial of the food package implicated any medical need or risk of harm. San Miguel asserts that, after he was denied the calorie shakes, he began losing weight. Because of his weight loss, he asserts his family was "worried about him" and that he should be allowed a food package from them. Unlike his claim with respect to the calorie shakes, which he was originally provided in accordance with a medical order, he fails to reference any physician's order or suggestion from a medical professional that he needed a food package. Furthermore, he requested the food package after he lost weight, so he does not assert that the denial of the food package was the cause of his weight loss. Accordingly, because nothing in San Miguel's complaint suggests that his request for access to a food package implicated a medical need or that he was harmed by Searcy and McLane withholding it, the district court did not err in dismissing San Miguel's claims against Searcy and McLane for denying him access to the food package.

**B**

We next turn to San Miguel's appeal of the district court's dismissal of his § 1983 claims against McLane and Searcy for allegedly denying him

---

[61] *See Collignon v. Milwaukee Cnty.,* 163 F.3d 982, 989 (7th Cir. 1998) ("In the context of a claim for inadequate medical care, the professional judgment standard requires . . . the plaintiff's medical needs [to] have been objectively serious.").

recommended dental treatment, which San Miguel labels as claims three and four. We review the district court's dismissal of these claims de novo.[62]

San Miguel frames the denial of his dental care as two distinct claims: (1) denying him recommended dental care and (2) forcing him to pay for his dental care. However, we construe his complaint as a single claim, alleging that McLane and Searcy violated his right to adequate medical care by not paying for recommended dental treatment, and in effect, totally denying him treatment.

According to San Miguel, since he has been housed at the TCCC, he has visited the dentist at least twice. On the first visit, San Miguel alleges that the dentist "checked his tooth and specifically[] assessed that San Miguel needs to have his tooth filled, and that permanent damage will result in not having it filled and he will eventually lose it." After making a request for this treatment in May 2018, TCCC officials advised him that TCCC "only[] pay[s] for extractions." Furthermore, after filing his initial complaint, but before filing his amended complaint, San Miguel visited a different dentist who allegedly told him he saw "[two] cavities that need to be filled, and that [his] front tooth will probably need a root canal if it is going

---

[62]*See infra* Part II; *see also See Sw. Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008) ("A Rule 12(b)(6) dismissal for failure to state a claim is reviewed *de novo.*").

to be saved." He "complain[ed]" about his tooth to Searcy, to which Searcy responded: "well I'll tell you right now we[']re not gonna pay to fix it."

The magistrate judge first concluded San Miguel's dental claims are barred by the statute of limitations. We disagree.

The statute of limitations is an affirmative defense.[63] "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred . . . ."[64] "Because there is no federal statute of limitations for actions brought pursuant to § 1983, federal courts borrow the forum state's general personal injury limitations period."[65] In Texas, the pertinent limitations period is two years from the date on which the cause of action accrues.[66] However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."[67] "Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[68]

San Miguel filed his initial § 1983 complaint in January 2020, so in order to avoid the statute of limitations at this stage, the pleadings must not foreclose the conclusion that he knew of his alleged constitutional injury after

---

[63] *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).

[64] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)

[65] *Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019) (first citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); then citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)), *as revised* (July 2, 2019).

[66] *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993).

[67] *Wallace*, 549 U.S. at 388.

[68] *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)).

No. 22-10517

January 2018. It is true that he alleges he has been denied dental care for over four years, but according to his declaration and the grievance records, San Miguel first complained to officials that he needed a filling and learned of the extraction-only policy in April 2018. It is unclear when San Miguel learned that he could lose his tooth if he did not have it filled, but he likely did not know of any constitutional violation until he knew the ramifications of being denied the dental treatment and that the TCCC would not pay for the treatment. Additionally, before San Miguel filed his amended complaint, he saw another dentist who recommended he have two more cavities filled, which could be construed as a new injury. Finally, Defendants do not argue the statute-of-limitations issue on appeal. Accordingly, it is far from clear that San Miguel's claims began to accrue more than two years before filing his complaint, so we cannot say "it is evident from the plaintiff's pleadings that the action is barred."[69]

We turn next to the magistrate judge's analysis of San Miguel's dental claims. As previously discussed, we recognize the magistrate judge's error in concluding that "San Miguel's right to reasonably adequate medical care derives from the Eighth Amendment," and we have not yet decided whether the deliberate indifference or professional judgment standard applies to inadequate-medical-care claims by civilly committed individuals.[70] However, we need not decide which standard applies at this time because

_____

[69] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

[70] *See Perniciaro v. Lea,* 901 F.3d 241, 255-56 (5th Cir. 2018) (acknowledging the issue but refusing to decide whether the deliberate indifference or professional judgment standard applies to inadequate-medical-care claims by civilly committed individuals).

San Miguel has stated a claim even under the more difficult deliberate indifference standard.[71]

In *Carlucci v. Chapa*,[72] we faced similar facts and concluded the plaintiff had sufficiently alleged a deliberate indifference claim.[73] In that case, Gino Carlucci was a prisoner at a federal correctional institution and brought a *Bivens* action against several prison officials after they failed to provide him with recommended dental treatment.[74] Carlucci's teeth were cracking and breaking, and he alleged that a dentist told him "all of the teeth that are hitting will eventually break or crack and the only way to stop this . . . is to restore the missing bridge and repair the fractured teeth."[75] The magistrate judge in that case dismissed Carlucci's complaint, noting "Carlucci declined to have any of [] his teeth removed, even though it would resolve[] the issue of his injured front teeth, because he preferred the restoration of his missing bridge."[76] In reversing the magistrate judge's conclusion, however, we clarified that "Carlucci's allegation [was] that the dentist recommended restoring his bridge and repairing the fractured teeth. He did not claim that the dentist recommended pulling the teeth and Carlucci disagreed."[77] Accordingly, we concluded "Carlucci's allegations of severe physical pain

---

[71] *Id.* at 256 n.14 ("Of course, *Youngberg* is, if anything, a less deferential, higher standard for state officials than is deliberate indifference.").

[72] 884 F.3d 534 (5th Cir. 2018).

[73] *Id.* at 540.

[74] *Id.* at 537.

[75] *Id.* at 539.

[76] *Id.*

[77] *Id.*

and denial of recommended dental treatment are sufficient to state a plausible claim for relief."[78]

San Miguel's complaint substantially mirrors Carlucci's complaint. San Miguel alleges that he "has taken [two] separate trips to the Dentist since he has been [at] the TCCC, and the Dentist has checked his tooth and specifically[] assessed that San Miguel needs to have his tooth filled[] and that permanent damage will result in not having it filled and he will eventually lose it."  After "complaining about his tooth" and filing several sick call requests and grievances, Searcy and TCCC officials told him they only provide extractions and would not pay for the treatment.  He further alleges that McLane is in "charge of contracting treatment and care providers" and personally denied him dental treatment.  Similar to *Carlucci*, while the TCCC may have offered to pay for a tooth extraction, nothing in San Miguel's complaint or the record suggests that a dentist had recommended extraction, only the tooth repair.[79]

The magistrate judge distinguished *Carlucci* from San Miguel's circumstances in two ways.  First, he noted that "San Miguel claims only a single chipped tooth, seeking a cap or a filling to repair it" as opposed to the multiple teeth in *Carlucci*.  Second, he noted that "San Miguel does not claim ongoing pain and suffering due to the chipped tooth."  However, these facts do not meaningfully distinguish San Miguel's allegations from those in *Carlucci*.  In a supplemental declaration, which we are required to consider,[80] San Miguel asserts that another dentist recommended he have two more

---

[78] *Id.*

[79] *Id.*

[80] *See Howard v. King,* 707 F.2d 215, 220 (5th Cir. 1983) (holding that a district court was "required to look beyond the inmates' formal complaint and to consider as amendments to the complaint those materials subsequently filed").

teeth filled. Furthermore, when considering San Miguel's declaration in support of his request for a preliminary injunction,[81] he alleges that his tooth "got infected" and "it was very painful." According to the nurse's record of one of San Miguel's visits, he even rated the pain as a "10" on the pain scale. At bottom, San Miguel, like Carlucci, alleges that he complained about his tooth, recognized that he would lose it if he was not provided dental treatment, filed several sick call requests and grievances, and was denied recommended dental treatment in light of an extraction-only policy. When we liberally construe San Miguel's complaint and "review the facts in the light most favorable to the non-moving party," San Miguel pleaded sufficient facts that "state a claim to relief that is plausible on its face."[82]

We further conclude that the magistrate judge erred in concluding that the TCCC could require San Miguel to pay the full price of his treatment when he otherwise could not afford the recommended treatment and it would operate as a complete denial of care. The magistrate judge cited several cases when concluding that the TCCC could "requir[e] San Miguel to pay for a portion, or all, of the expense of his health care." However, in these cases, the plaintiffs did not allege that they would be completely denied medical care by the imposition of fees.[83] For instance, in *Morris v. Livingston*,[84] we held that prison officials were not deliberately indifferent by imposing a $100

---

[81] *See Hale v. King,* 642 F.3d 492, 501 (5th Cir. 2011) ("We also consider the allegations in [the pro se litigant's] motion for injunctive relief.").

[82] *Carlucci*, 884 F.3d at 537 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[83] *See Morris v. Livingston,* 739 F.3d 740, 748-49 (5th Cir. 2014); *Ward v. Fisher*, 616 F. App'x 680, 682 (5th Cir. 2015) (per curiam) (unpublished) (concluding the plaintiff failed to state a deliberate indifference claim when he was treated with more affordable medications when his preferred ointment was no longer available).

[84] 739 F.3d 740 (5th Cir. 2014).

health services fee but expressly reasoned that the plaintiff did not "allege that he was denied access to medical care because of his inability to pay the fee, or that provision of medical care was delayed as a result of his inability to pay."[85]  Indeed, we even recognized that the program in *Morris* "d[id] not condition the provision of needed medical services on an inmate's ability to pay . . . [and] no inmate [was] ever denied medical care for lack of money."[86] In contrast, San Miguel alleged that he was "indigent" and, to no avail, submitted several requests to work so he could afford the treatment.  Also unlike the cases cited by the magistrate judge, San Miguel asserts that he was not being asked to pay a small fee but rather the entire price of the treatment. Accordingly, San Miguel sufficiently alleged that by requiring him to pay for his treatment, he was being completely denied recommended medical treatment in violation of his right to adequate medical care.[87]  Because the magistrate judge did not address whether Searcy and McLane were nonetheless entitled to qualified immunity, we decline to reach that question at the motion-to-dismiss stage.[88]

---

[85] *Id.* at 748-49.

[86] *Id.* at 749 (internal quotation marks omitted) (quoting *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997)).

[87] *See Youngberg v. Romero*, 457 U.S. 307, 315 (1982) (recognizing that a civilly committed individual's rights to adequate food, shelter, clothing, and medical care flow from the Fourteenth Amendment); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) (establishing "the government's obligation to provide medical care for those" incarcerated).

[88] *See Arnold v. Williams,* 979 F.3d 262, 269 (5th Cir. 2020) (reversing and remanding Rule 12(b)(6) dismissal in § 1983 case without addressing qualified immunity when the district court erroneously determined that the plaintiff failed to sufficiently plead constitutional violation and did not reach the issue of qualified immunity).

In summary, while we express no views on the merits of San Miguel's dental claims, the district court erred in dismissing them against McLane and Searcy at this stage in the litigation.

## C

Finally, we turn to San Miguel's claims five through nine, which allege Searcy, McLane, and Keesee have improperly denied him appropriate psychiatric care and medications.

We begin with claims five and six, in which San Miguel alleges that McLane and Searcy instituted a policy of denying him psychiatric medical care. According to San Miguel, when TTUHSC took over psychiatric care in the TCCC, "they immediately began to deprive TCCC patients of their [m]edications." In particular, San Miguel asserts that he suffered under the TCCC's "policy and custom of cutting spending by discontinuing patients['] medications and . . . contracting for a lower standard of medical care for TCCC patients." Furthermore, he appears to argue that this led to the denial of "the Psychiatric [m]edications he had been prescribed for years."

The magistrate judge construed San Miguel's complaint as asserting an "informal policy or custom" through two theories: (1) McLane and Searcy created a "de facto policy or custom of denying TCCC residents psychiatric care for non-medical financial reasons;" and (2) they ratified the decision to stop his medications as final policymakers. The magistrate judge recommended these claims be dismissed, and we agree.

San Miguel fails to plead any factual basis for his conclusory assertion that "McLane, Searcy, and the Defendants as [a] whole apparently believed they could just stop providing proper adequate medical care" or that McLane and Searcy even had knowledge of the decision to stop his medications. Indeed, he claims McLane and Searcy instituted this policy as a means of "cutting spending," but points to no facts that suggest this was the

motivation. The only fact he alleges is that they "discontinued his medicine because a blood test showed that the medicine was not in his blood at all." With respect to his theory that McLane and Searcy ratified the decision to stop his medication, he alleges no facts that they even had knowledge of the decision.[89] Instead, he merely alleges that "Keesee [and] Bearden[] suddenly stopped providing him his antipsychotic psychiatric medications." Accordingly, he has not pleaded sufficient facts to "state a claim to relief that is plausible on its face."[90]

We turn next to claims seven, eight, and nine against Keesee. Like the claims against nurse practitioner Bearden, San Miguel claims that registered nurse Keesee violated his constitutional rights by "abruptly stopping [his] psychiatric medication knowing of his serious medical need, then ignoring his complaints and requests for help"; "denying him medical care because he has broken the rules of the facility"; and retaliating against him for filing a grievance against her by "completely stopping any and all psychiatric medications."

The allegations asserted against Keesee are substantially similar to the allegations against Bearden. According to San Miguel, Keesee told him that his Seroquel and Wellbutrin were either not present in his blood or existed only at very low levels and "abruptly" discontinued these medications, which caused him to experience severe withdrawal symptoms. Additionally, after stopping these medications, he asserts Keesee ignored his requests for

---

[89] *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 130 (1988) (noting that the "purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection" of a broader policy absent a showing of express approval or awareness by a supervisor).

[90] *Carlucci v. Chapa*, 884 F.3d 534, 537 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

medical attention while he was suffering these withdrawal symptoms. Finally, he contends that Keesee refused to give him medication because he "had a history of breaking the rules at the facility" and as retaliation for filing a grievance against her.

For many of the same reasons we affirm the district court's dismissal of the claims against Bearden, we affirm the dismissal of San Miguel's claims against Keesee.

First, even if we applied the professional judgment standard, San Miguel has not alleged facts from which we could plausibly infer Keesee's behavior constituted a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."[91]  Indeed, a decision "made by a professional, is presumptively valid."[92]  According to San Miguel, Keesee's primary role in denying his Seroquel and Wellbutrin was notifying him that the provider, Bearden, had decided to stop these medications.  The only allegation that suggests Keesee was actually involved in the decision to stop his Seroquel and Wellbutrin is San Miguel's assertion that Keesee "told the provider" that she thought the medications were "bad for [his] blood pressure[] and bad for [his] anxiety."  To support the notion that suddenly stopping his medications constituted a substantial departure from accepted standards, San Miguel offers the clinical pharmacology for Seroquel and Wellbutrin, which warn that stopping these medicines abruptly may cause serious side effects.  However, these warnings do nothing to suggest that, by relaying her perception of how San Miguel reacted to the medications, Keesee "substantial[ly]" departed from accepted professional

---

[91] *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).

[92] *Id.*

judgment.[93]    According to San Miguel's own allegations, Bearden was in charge of determining San Miguel's medications, not Keesee.

Second, to the extent that San Miguel alleges Keesee denied him medical care because he had a history of breaking the facility rules, he fails to allege Keesee's personal involvement.    San Miguel acknowledges that Bearden, not Keesee, informed him that she was ceasing his medication in part because he had "a [] long history of not going to group[] and breaking the rules."

With respect to San Miguel's claim that Keesee ignored his requests for help as he suffered withdrawal symptoms, the magistrate judge did not err in concluding that San Miguel failed to sufficiently allege facts that indicate Keesee personally ignored his symptoms or requests for help.  Like San Miguel's allegations against Bearden, San Miguel asserts that he requested help from several people but pleads no facts involving when or where he asked Keesee for help.  He alleges that "[m]ultiple security officers witnessed [his] suffering" and he asked "the TTU Nurse" and "RN Joe Brown" for help.  Furthermore, on November 19, 2019, Keesee responded to San Miguel's grievance in which he complained that he "can't stop shaking" and "can't sleep."    However, according to San Miguel's own account of this meeting, he only mentioned his trouble sleeping, not other withdrawal symptoms, and Keesee explained that the medications had not been in his bloodstream according to the blood tests.    Nonetheless, in completing the grievance form, Keesee explained that he would see a "provider next week."    Accordingly, San Miguel failed to sufficiently allege

---

[93] *Id.*; *see also Mitchell v. Washington*, 818 F.3d 436, 443-44 (9th Cir. 2016) (concluding that the plaintiff's presentation of medical texts recommending one drug over another was not sufficient evidence to create a fact issue as to whether a prescriber substantially departed from professional judgment).

any facts that indicate Keesee either was, or should have been, aware of his withdrawal symptoms and nonetheless ignored them.

San Miguel's claim that Keesee retaliated against him for filing grievances against her and Bearden fares no better.  Like the claims against Bearden, we agree with the magistrate judge's recommendation that this claim be dismissed.

Once again, San Miguel only provides the conclusory allegation that "Keesee denied [him] his medication . . . because he had submitted a grievance against her in the past."  This conclusory allegation is insufficient to support a retaliation claim, and the "chronology of events" also does not support the claim.[94]   San Miguel acknowledges Keesee denied him medication prior to him filing these grievances.  Indeed, he admits that he filed a grievance against Keesee because she had previously refused to give him medicine for his headache.  Accordingly, the district court did not err in dismissing San Miguel's retaliation claim against Keesee.

V

Finally, we address San Miguel's arguments that the district court erred in (1) denying his motion to vacate the judgment and leave to amend his complaint, (2) denying his motion for a preliminary injunction, and (3) denying his motion for appointment of counsel.

A

San Miguel moved to vacate the judgment and for leave to amend his complaint under Rule 59(e).  Rule 59(e) motions "must clearly establish either a manifest error of law or fact or must present newly discovered

---

[94] *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (internal quotation marks omitted) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

evidence."[95] A motion to amend under Rule 15(a), however, "permit[s] liberal amendment to facilitate determination of claims on the merits."[96]

> Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the motion to vacate should have been granted. Thus[,] the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a).[97]

Therefore, "we review the district court's denial of [San Miguel's] 59(e) motion for abuse of discretion, in light of the limited discretion of Rule 15(a)."[98]

Even applying the Rule 15(a) standard, the district court did not abuse its discretion in denying San Miguel's motion. We have held that district courts did not abuse their discretion when plaintiffs had previously amended their complaints and failed to argue that any proposed amendments raised new facts.[99]   Here, San Miguel has already been allowed to amend his

---

[95] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (internal quotation marks omitted) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[96] *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

[97] *Rosenzweig*, 332 F.3d at 864 (internal quotation marks omitted) (quoting *Dussouy*, 660 F.2d at 597 n.1).

[98] *Id.*

[99] *See, e.g.*, *Schiller v. Physicians Res. Grp Inc.*, 342 F.3d 563, 568 (5th Cir. 2003) (affirming the district court's denial of Rule 59(e) motion to amend complaint when the plaintiffs had previously amended their complaint three times); *Martinez v. McLane*, 792 F. App'x 282, 287 (5th Cir. 2019) (per curiam) (unpublished) ("[A]lthough district courts ordinarily grant leave to amend an inadequate complaint, an exception exists where plaintiff: (1) repeatedly declared the adequacy of [his] complaint in a lengthy response to defendant's motion to dismiss, and (2) refused to file a supplemental complaint even in the face of a motion to dismiss." (internal quotation marks omitted) (quoting *Martinez v.*

complaint; he does not assert the existence of any new or additional facts in his motion to vacate or seek leave to amend; and he does not offer a proposed amended complaint. Accordingly, the district court did not err in denying San Miguel's motion to vacate the judgment.

## B

San Miguel requested a preliminary injunction with respect to his dental claims. "We review the denial of a preliminary injunction for abuse of discretion."[100] San Miguel is entitled to the "extraordinary remedy" of a preliminary injunction only if he establishes:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[101]

We addressed a similar motion in *Leachman v. Harris County*,[102] a recent unpublished opinion. In that case, we noted the "conflicting case law" surrounding "the theory that a prison's refusal to provide medical treatment

---

*McLane*, No. 5:16-CV-265-C, 2017 U.S. Dist. LEXIS 225079, at *2 n.3 (N.D. Tex. Sep. 7, 2017))); *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008) (unpublished) (affirming the district court's denial of Rule 59(e) motion to amend complaint when the litigants "d[id] not argue that their proposed amendment raised any facts which were not available previous to the district court's opinion"(internal quotations omitted) (quoting *Rosenzweig*, 332 F.3d at 865)).

[100] *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

[101] *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)).

[102] 779 F. App'x 234 (5th Cir. 2019) (per curiam) (unpublished), *as revised* (Oct. 2, 2019).

No. 22-10517

that is ordered by a doctor or dentist can constitute deliberate indifference."[103]  In light of the conflicting caselaw, we denied the motion for a preliminary injunction because the plaintiff could not "show[] a substantial likelihood of success."[104]  The same holds true in this case.  Furthermore, even if we applied the professional judgment standard to San Miguel's dental claims, he has not presented any evidence beyond allegations in the pleadings that the extraction procedures offered by the TCCC constitute a "substantial departure from accepted professional judgment, practice, or standards."[105]  Accordingly, the district court did not err in denying San Miguel's motion for a preliminary injunction.

## C

Lastly, we turn to San Miguel's motion for appointment of counsel. We review the district court's denial of a motion for appointment of counsel for abuse of discretion.[106]  "In evaluating whether the appointment of counsel is proper, the district court [should] consider[] the type and complexity of the case, the litigant's ability to investigate and present the case, and the level of skill required to present the evidence."[107]  Here, we cannot say that the

---

[103] *Id.* at 238.

[104] *Id.*

[105] *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *see also Slaughter v. Atkins,* 396 F. App'x 984, 988-89 (5th Cir. 2010) (per curiam) (unpublished) (affirming the district court's denial of a preliminary injunction when the movant presented "no evidence" as to a component of the claim).

[106] *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).

[107] *Id.* (internal quotation marks omitted) (quoting *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001)).

district court abused its discretion in denying San Miguel's motion for appointment of counsel.

\* \* \*

For the foregoing reasons, we REVERSE the district court's dismissal of San Miguel's claims that defendants McLane and Searcy denied him recommended dental treatment and AFFIRM the district court's dismissal of all San Miguel's other claims. Furthermore, we AFFIRM the district court's denials of San Miguel's motion for a preliminary injunction, motion to vacate, and motion for appointment of counsel. In light of these orders, we DENY San Miguel's motions for a preliminary injunction and appointment of counsel that he filed in the appeal.